Next case for argument is Traiteur v. Commonfields of Cahokia Public Water District at all. Counsel. Good morning, Your Honors. My name is Anthony Gilbreth. I represent the appellant's defendants in this case. We are here on the appeal of a preliminary injunction issued by the Circuit Court of St. Clair County. I believe this particular case probably bears a little bit of time on the facts, so long as the court is amenable to such time. Mr. Traiteur, who is the plaintiff in this cause, was appointed by the Board of Trustees as General Manager for the Commonfields of Cahokia in September 2005. On April 21, 2009, which was the last meeting after the consolidated election of 2009 in which new members of the Board of Trustees were elected, on April 21, that outgoing Board of Trustees extended Mr. Traiteur's term for an additional five years, prior indeed to the expiration of the initial five-year term. In addition to the appointment, there was a contract entered into whereby Mr. Traiteur was guaranteed a salary in excess of $80,000 plus 5% increases annually. Also in that contract is a termination only for cause provisions. Now the statute that authorizes the appointment of a General Manager requires a unanimous vote of the Board of Trustees in order to terminate a General Manager. So they didn't have enough votes to terminate? The action taken by the current Board of Trustees in 2010, correct. Well, I assume that there wasn't sufficient, there wasn't unanimity of the Board with regard to the potential, with regard to whether Mr. Traiteur would be terminated. But in 2009, that contract was entered into, which again has a for-cause provision which isn't contained in the statute, and reads that even if Mr. Traiteur is terminated for cause, he continues to receive every single benefit guaranteed to him under that contract. So after a hearing, after he has a chance to answer the charges, and after the Board of Trustees determines that there is cause to terminate him and they unanimously vote to terminate him, he still gets everything under his contract for the duration of that contract, which will run until 2014. In April of 2010, the current Board of Trustees, after experiencing difficulty with the services performed by Mr. Traiteur, passed legislation that is the subject of Mr. Traiteur's lawsuit and the subject of this appeal. That legislation was an ordinance and a resolution which had the effect of changing Mr. Traiteur's job duties and re-regressing them, if you will, to what the statute allows, and retaining to Mr. Traiteur the powers he has under the statute, but removing all other duties and obligations that the contract secured to him, and also to limit communication between the employees, directed to the other employees of the law business, to limit their communication with Mr. Traiteur. That's very inherently contradictory. You just said that he retains the duties he had before, but you're making it impossible for him to discharge those duties by prohibiting communication in order to discharge them. Well, I don't know that that's entirely true. I mean, I think he could still exercise the powers that he has under the statute, and basically, under the statute, his powers are to hire, fire, and set salary. And so, frankly, he wouldn't even necessarily have to have that direct communication with any employees in order to do that. I mean, he could communicate through the board of trustees or whomever else would be appropriate. But if that's what the board decides to do, though, I think the board's within its discretion to do that. The board's not taking away any of his authority or his powers. The board is perhaps limiting the means by which he can exercise them. But I don't believe that they – I mean, they have secured to him – they've left with him the powers under the statute. And if those – you know, if, as a practical matter, those become more difficult to exercise, perhaps that's the case, but that doesn't mean he cannot exercise those powers. Do you think that he is considered a public official? As opposed to a public employee, Your Honor? I don't think – I think public is the key. Okay. Okay. Well, he is an appointed manager of the waters. He's appointed by – I would say that the board of trustees are the public officials and that the general manager is akin to any other person who's appointed by a municipal body, a corporate council, an engineer, things like that. He is the appointed manager of the board, and I think he serves at the pleasure of the board. Granted, there's a heightened burden if that board were to remove him. However, he serves at the pleasure of that board. Now – Was he doing anything that was beyond his authority, illegal, immoral, otherwise? The board of trustees – the new board of trustees came in and made several requests of Mr. Trader for documents, information, payroll information, in order to operate the water district in an efficient manner. I mean, obviously, you know, when you get new persons in, they're going to want to kind of get an idea of how the house is being – whether the house is in order, and they were trying to do that. And he made every effort to frustrate every effort they made to obtain whatever information it was that they wanted. He was – he would treat employees differently based on, frankly, who they were and why they were there, and he made efforts to frustrate the board of trustees' efforts to run the water district in as efficient a manner as possible. And that was established by what – what facts did he do for the frustration of the water district, the board of trustees? Well, there is in the record on appeal, Judge, we did have a motion to stay that we argued at the circuit court. Candidly, I'll be happy to get into it so long as – I'm not later criticized for getting into something that maybe wasn't at the hearing on the preliminary injunction. We don't want you to go outside the record. It's in the record. It's in the record. Okay. I want to make it clear to myself and in fairness to opposing counsel that that was raised at the motion to stay. Now, upon – and the majority of that information was with regard to actions that occurred after the injunction was issued. Candidly, Judge, there was little testimony at the preliminary injunction stage about the actions that he had performed. And frankly, Judge – excuse me, Justice, I believe that, you know, as a legal matter, Plaintiff had the burden of proving the five elements. And we're all pretty familiar with those elements, I think. I know particularly I am. But he had to establish a clearly ascertained right. He had to establish reputable harm. He had to establish no lack of remedy in law. And he had to – balancing the hardships had to weigh in his favor with regard to the issuance or non-issuance of the injunction. I'll address four of those issues. And the first is the clearly ascertained right. I don't think that the plaintiff has established any clearly ascertained right. And the only one that I can suss out from plaintiff's brief is, well, you were trying to constructively terminate me and you can't do that. Well, he's not terminating. And there is no constructive termination. There is no authority that plaintiff has cited that constructive termination would be outside the authority of this particular board on these particular circumstances. So he wouldn't be terminated. He'd be getting paid to do nothing. Right, which would be the case if he were terminated anyway. I mean, really, we're in the same boat regardless of whether he's terminated. But the Board of Trustees acted within their authority of limiting duties that the prior Board of Trustees gave to him at the last meeting they held before they left office, or a certain number of them left, a majority of them left office anyway. And they're trying to, you know, run the ship as they would run the ship and not have their hands tied by the prior Board of Trustees. And I think that's important because the Kilhabert case, which I cited in my brief, says that the acts of public officials will not be enjoined unless it's shown that they are illegal or beyond their authority. There's no evidence of that. There's no law cited by plaintiff that that's the case here. If the Board of Trustees of the Water District can assign duties to the general manager, then certainly that Board of Trustees can withdraw duties from that general manager as they see fit. And there's nothing in the statute that says any appointment cannot change or the scope of any appointment cannot change for the duration of the five-year term under the statute. Mr. Trader testified at the hearing that he still receives his full salary. He still has use of the company car that he has. He still has use of the gas car that he had. In fact, he's got use of all the benefits. He's got medical benefits. He's got everything else that he would have if he were still out. And he is now because of the injunction. But if he were to continue to allow to show up at the common fields day in and day out. But the problem that we had was the Board of Trustees couldn't get business done because he was standing in the way. And their concern was about the continued efficient operation of the Water District. Second, with regard to irreparable harm, kind of in the same boat, he hasn't shown any harm at all. He's not suffering any harm whatsoever by the existence of this legislation. The only thing he can't do is, frankly, he's getting paid not to go to work at this point. And I know that that's kind of a strange argument for me to be making, and I recognize that. But if the Board of Trustees actually terminated him, then he would be anyway. So I think it's sort of to engage in a fairness analysis or an analysis of how is this, and I'll get into this, how this might potentially be damaging the customers of the public water district is a red herring. I mean, the customers of the Water District are no different. If this legislation were to stand, they're in no different position than they would be if he were actually terminated. And to say that this is a constructive termination I think is just overplaying the plaintiff's hand, because it's not. It's a limiting of his duties and it's a limiting of the means by which he can exercise the powers secured to him by statute. Under the provision of the new board, an employee couldn't even ask him if he'd like a cup of coffee. Why isn't that a constructive termination? Because the reason I, what I, again, is that he still can't hire, fire, and set salaries. Because the Board of Trustees, the current Board of Trustees did not do any, in fact the legislation expressly says nothing herein is intended to infringe upon the duties secured, the powers and duties secured to him by statute. And frankly, with regard to the communication issues, he was frustrating efforts and was manipulating communications among the employees between the Board of Trustees. It was sort of operating as his system to do as he saw fit, regardless of any instruction from the Board of Trustees. But even, I mean, let's even assume that he's, you know, again, that he's having, he has to perform his functions differently. There's nothing illegal about that. There's nothing outside the law about that. And even if maybe, maybe factually it's a bit difficult, that doesn't make it illegal. And that doesn't mean that the Board of Trustees is not exercising, properly exercising its discretion in doing what it's done. And even if they didn't, that doesn't mean that an injunction should be achieved. This, at its core, is a contract case for Mr. Trader. If Mr. Trader believes that his contract has been violated, then he can file a breach of contract action. And his damages will be assessed by the tribe or his back. The problem he has in that regard is that he has no damages. He has no damages. And that goes to the irreparable harm issue. He has not suffered at all as a result of this action of the Board of Trustees. And if he believes the legislation is illegal, and if he believes that the legislation is unlawful, then his declaratory judgment action will figure that out. That will be determined by the court. And the court, after a full hearing on the merits, will determine whether or not this legislation is beyond the authority of the Board of Trustees. But that, again, doesn't mean that an injunction should be achieved. So not being able to do your job is not irreparable harm? I don't know of any authority that holds that. The plaintiff hasn't cited any authority that holds that. And the only, the, he, I don't, I mean, it's, I don't see how that could be irreparable harm. So long as you're not suffering damage. Now, if he was told to go home, don't come back, and by the way, we're not paying you another dime, we've got a whole different ballgame. That's a whole different issue. And maybe in that case an injunction would be more, more adequate. I like the better term, adequate. Maybe it would be appropriate. But in this particular case, that's not what's going on. The only evidence presented of any actual harm to the defendant, and again, I use the term evidence, excuse me, plaintiff, I use the term evidence loosely, was his own testimony that he thought his reputation was damaged. Well, that's hearsay. That can only be hearsay. He can't testify that his reputation has been damaged because he can only be testifying to what other people told him. An objection was raised on that basis in the trial court. It was overruled. But I think that evidence should be excluded and should be considered by this court in determining whether there's harm. On top of that, there's the Kessler case, which I cited in my brief, which holds that damage to professional reputation generally cannot serve as a basis for irreparable harm and serve as the basis for the issuance of a preliminary injunction. So there's no confident evidence of any damage to reputation. And even if there were, under Kessler, that was a doctor whose malpractice insurance had been unlawful, inappropriately non-renewed, and he saw a preliminary injunction, the trial court granted it, and the appellate court said that's an abuse of discretion, among other reasons that there was no irreparable harm here. Damage to professional reputation is not irreparable harm and cannot serve as the basis of a preliminary injunction. They overturned the trial court. Third is the adequate remedy in law issue. And I've touched on this a little bit. Any right, again, I contend that plaintiff has not established clearly a right to continued employment. That just doesn't exist. And even to say that it's continued employment is a little beyond the pale because he is employed. But I don't know of any authority that says you have a clear right to continue showing up at your particular place every day, even if the people that run that place have said we don't really need you coming in anymore. But even assuming there's a right, even assuming he has a clearly ascertained right, that could be fully vindicated and fully taken care of by way of his declaratory judgment action, which is still pending in the circuit court. That will determine whether or not this action was appropriate or not. And in the meantime, he's not suffered. He's not suffered any harm at all if the only issue is he can't show up to work on a particular day at a particular place. Or, again, a breach of contract action if there's been a breach of his contract. And if there were a breach of his contract, that would be adjudicated by the courts, and damages would be assessed if he's successful. And then with regard to the last element, the balancing of the hardships, you know, it's plaintiff's burden to show all of these elements. And the plaintiff did not present any evidence at the hearing of preliminary injunction that indicated that the hardship on him was greater than the hardship on the board. We've touched on the issues of the hardship on the board. If the injunction would issue, that would be basically permitting him to return. But there was no evidence. The only evidence, again, would have been related to this questionable reputation evidence that was elicited at the hearing. But he failed to present, my position would be the plaintiff failed to present any competent evidence that the hardship on him was greater than the hardship on the defendant with regard to the issuance or non-issuance of the injunction. That, I think, is what's at the heart of this appeal. Setting aside the issues of, as a practical matter, you know, and in effect, as a legal matter, the plaintiff simply did not sustain his burden to obtain a preliminary injunction. Might the plaintiff ultimately succeed in one of these several alternative causes of action that he's either filed or I've argued today? Maybe. And if so, then we'll deal with that then. But in the meantime, I think it's beyond the discretion of the trial court to enjoin a public body from enforcing its own legislation when there's been no show whatsoever that that legislation is beyond the legal authority of that particular court. Given that there is no evidence, and given that plaintiff has failed on four of the five elements of his preliminary injunction, we would ask that the trial court be reversed, that the injunction be vacated, and that I, in this positive manner, prefer the proceeding consistent with this court's opinion. Thank you, counsel. Counsel? Thank you, Mr. Court. My name is Robert Sprague. I represent Dennis Frazier. I'm sure all of us would like to say you can't go to work but get paid. Simply to do that to me. This is a public body and this is a serious issue. All a petitioning court in a preliminary injunction stage has to do is raise a fair question of the existence of a right. The appellate court reviews the granting of the preliminary injunction on the abuse of discretion standard. Under the abuse of discretion standard, a reviewing court does not decide whether it agrees with the circuit court's decision and instead determines whether the circuit court acted arbitrarily without appointment of conscious judgment or in view of all circumstances exceeding that bounds of reason and ignored recognized principles of law so the substantial prejudice results in, I think, a review of the record. In this case, it shows the judge absolutely did not abuse his discretion. Dennis Frazier is the general manager of the Commonfields Coast Republic Water District. They renewed his contract. It happened to be on April 1, 2009. The general manager's job is set up by 70 ILCS 3705-17. It's cited in my brief, but I'll read you the last sentence of that section. It says, such general manager shall be chosen without regard to his political affiliation and upon the sole basis of this administrative and technical qualifications  and he may be discharged only upon unanimous vote of the board of trustees. Such general manager need not be a resident of the district at the time he is chosen. Is there anything in the record to support that this is an issue involving political problems between the board and Trottier? There's nothing in the record to show that this is a political issue except that the resolution 76 and our December 1 were only passed and signed by four trustees. I say it's constructive determination. If they get away with this, the statute means nothing, and they're screwing the taxpayers. They say, you go home, we're going to pay you until 2014 because we don't have the votes to fire you as the statute sets up. And the reason they set this statute up is because this is a public utility that distributes water to people and it provides a sewer service. So the legislature, I think, purposely set this statute up so that politicians can't play with it. You've got to have a man who's qualified. You have to have a license to do this job, which Mr. Trader does. And what they've done, they passed Resolution 76 and that's cited too, but basically it says all persons, officers, agents, employees, supervisors, etc. are prohibited from contacting or talking to the general manager of the business. None of the employees can talk to him. And the next section says they're subject to termination if they do. Clearly I agree there's irreparable harm to the taxpayers, but what's the irreparable harm to the plaintiff here if he's getting paid to not do his job? One, he can't perform his statutory duties. It's provided by 3705-15. His reputation is being damaged. He testified to that. I don't think you can ignore the irreparable harm to the taxpayers. I think that's all part of this issue and I think that's part of what Judge Young considered. The definition of irreparable harm is set forth in the Conflict. Conflict is when a harm is of such a nature that the injured party cannot be adequately compensated, therefore a damage or whether the damage cannot be measured by any certain pecuniary standards. You can't measure the damage if he's not allowed to go do his job or do his statutory duties as set forth by the statute. Taxpayers, the public's never going to get the $80,000 a year they're paying. And if this goes on, they're going to pay until 2014. 3705-15 means nothing. I mean, you might as well just scratch that off the books. You've got to appoint a manager for five years. You've got to appoint him without political affiliation. He needs to manage the affairs and property of the district and he can't be fired without a unanimous vote. They did that purposely so something like this can't happen. Is there anything in the record that they tried to get a unanimous vote and failed and then this resolution followed? They never brought it to a vote. There's nothing in the record about it. There's nothing in the record about the vote, but I think it's clear from the resolutions being passed and the ordinance being passed is that the vote is four to three. They had four votes and it's a seven-member board. And then they passed ordinance number one that basically says he's got to turn over all keys and can't go on the premises. So he can't go on any of the property of the water district. He can't talk to any of their employees, but they say he can do what he's supposed to do. Well, he obviously can't do anything. And he testified that part of his job, he prepared the plans to maintain the water district, maintain the water line, maintain the sewer lines. He directed all the employees. He had a water license. It was his job to check and make sure the water was safe. So I don't think there's any question that he suffered. And the public is suffering great irreparable harm. And I think I've cited cases in my brief. I don't want to reread them all to you, but the Westmont case, they talked about the mayor's appointment power. The irreparable harm was that of not only the mayor, but of the citizens when they granted that injunction. The bottom line is there's really nothing in the record that Mr. Trader did anything substantially wrong. And even if he did something substantially wrong, they can't fire him based on the statute. So since they can't fire him, this court has got control. The court passed these two ordinances. It says you can't do your job, you can't talk to employees, and we're going to keep paying you. I don't think there's any question that Judge Young made a conscious decision in this matter, examined the evidence before he entered the preliminary injunction, and I don't think his decision should be reversed. Is there anything in the record that would justify the board by saying he acted beyond his authority, he was doing unlawful activities, illegal activities? No. No, there's nothing in the record. There's nothing in the record. They tried to put some things in the record. I believe the State Department's in the record that he wouldn't give them the records, but they passed an ordinance and gave all the records to somebody else and they have the records. That's the only thing they can claim he didn't do, but there's nothing that he was doing illegally. You know, this is almost like a ghost employee situation. It's almost like this board is saying,  except he's on the payroll by contract. He has the contract to perform his duties and they won't let him. And therefore, Judge Young entered the preliminary injunction and under the abuse of discretion standard, I don't think there's any way that you can find that he abused his discretion. Thank you. Thank you, Counsel. Counsel? With regard to Mr. Sprague's statement of the laws, whether he only has the burden of proving a fair question of the right and issue, I think that only goes to the first element of the preliminary injunction, whether there's a clearly ascertained right. And I would argue that there isn't a fair question of any right to continue to show up at a particular place at a particular time. And even if there were, we've got several other elements that plaintiff has failed to carry his burden on with regard to preliminary injunction. With regard to the Court's inquiry, whether this amounts to a political issue, I think Mr. Sprague is correct. I think that while there really isn't anything in the record that would, you know, that factually in the record that would point to that, I think this Court could probably exercise its, you know, sort of like the jury can exercise its ordinary, you know, experiences and pardon the term, but it's the best one I can come up with, I don't have common sense, to assess the facts of when Mr. Trader was originally appointed in September 2005, to a five-year term, when he was appointed again at the last meeting of an outgoing Board of Trustees before the expiration, 18 months before the expiration of that five-year appointment, to another five-year term, and addressed him with significant procedural rights with regard to indetermination. And in addition to that, guaranteeing him payment of an $80,000-plus per year salary every year until 2014, regardless of whether he actually works there or not. I think the Court can take those into consideration in determining perhaps some of the behind-the-scenes goings-on, if you will. Well, not necessarily behind-the-scenes, but the practicalities and the actualities of these types of situations. With regard to Mr. Sprague's argument that this is in some way, shape, or form screwing the taxpayers, he's going to get paid either way. Mr. Trader is going to get paid his full salary, even upon termination of the clause, unless for some reason this contract is found to be against public policy, which it very well may be. I understand the Court's concern about his actual ability to perform the statutory duties that have been secured to him. I can appreciate that concern. Just because the one-way communication has been impeded, I'm sure Mr. Trader, in exercising his ability, could find a way to exercise his statutory duties and obligations without violating the legislation of the Board of Trustees. I'd imagine that's possible. I don't think it's incumbent upon the Board of Trustees to spell that out necessarily. They've secured him the rights and obligations and duties endowed upon him by statute. If he is as concerned as he purports to be of executing those, he can and probably will find a way to do that. But I don't believe it's incumbent upon, especially at this stage of the proceedings, it's incumbent upon the Board of Trustees to prove that this is how he can do the things he still needs to do. Obviously, there appears to be some sort of adversarial relationship between the two entities, Mr. Trader and the Board. With that last statement that you made, how could he perform his duties if he can't go on the property? Isn't that one of his duties, to inspect and make sure everything's running properly? Well, in all fairness, Your Honor, he's not the only one. He's not the man on the ground. But he could not communicate with the man on the ground. There are – while Mr. Trader was gone, while he was not on the premises due to the existence of the religious legislation, the Water District had an interim manager in place, and he managed the affairs and made sure that upkeep was done on all Water Works properties. I mean, it was taken care of. And I do think that the Board would be hard-pressed to say, don't come here, and then later say, hey, you're not doing what you're supposed to do, so we're going to take further action against you. I think they'd be hard-pressed to do that, and I think that is sort of its own check and balance, if you will, Your Honor. So I think that kind of resolves itself, if you will. And I understand we're here because things don't resolve themselves sometimes. But I think the Board would be hard-pressed to make that argument. That's all I have, unless the Board has any further questions. I don't believe we do. Thank you. Thank you. We appreciate it. We appreciate the briefs and arguments from counsel. Case is under advisement.